## 12093

### CATHCART *ET AL. v.* JENNINGS *ET AL.*

### (135 S. E., 558)

1. INSANE PERSONS.—Where summons in action to quiet title was personally served on lunatic, Court acquired jurisdiction, and lunatic's rights were fully protected by appointment of guardian *ad litem* on his failure to apply therefor.

2. INSANE PERSONS.—Appointment of guardian *ad litem* for lunatic by Court at different place from that which summons stated application would be ·made *held* not to affect Court's jurisdiction, and did not avoid judgment, where no injustice resulted.

3. TRUSTS.—Where land was purchased at Sheriff's sale, with agreement to reconvey to debtor wife, conveyance by declaration of trust after repayment of purchase money, failing to convey fee, would constitute violation of trust agreement.

4. TRUSTS.—One purchasing land at Sheriff's sale as agent for wife of owner would be in no position to assert interest under declaration of trust creating life estate after repayment of purchase money.

5. QUIETING TITLE.—Under circumstances, declaration of trust by one purchasing land at Sheriff's sale as agent for debtor's wife, limiting her estate to one for life after repayment of purchase money, *held* by mistake, and constituted defect in title to which subsequent purchaser was entitled to relief.

6. TRUSTS.—Where one purchasing land at Sheriff's sale, with agreement to transfer to debtor's wife, on repayment of purchase price, conveyed only life estate, he could claim no right to reversion therein.

7. TRUSTS.—Control of trust estates is peculiarly one of equity jurisdiction; Civ. Code 1912, § 3693, giving jurisdiction to compel infant trustee to convey estate of land held in trust for another.

8. QUIETING TITLE.—Where conveyance by one purchasing land at Sheriff's sale, under agreement to reconvey to debtor's wife, was mistakenly limited to life estate, such person and grantee were proper parties to suit by subsequent purchaser to remove such cloud on title.

9. QUIETING TITLE.—Where judgment for removal of cloud in title by decreeing declarations of trust did not express intention of plaintiff's grantor was warranted, instrument was properly construed as entirety, though affecting other property.

10. JUDGMENT.—If record shows jurisdiction of subject-matter and of parties defendant, judgment rendered could not be void, but at most only voidable.

11. QUIETING TITLE.—Courts of Equity have jurisdiction to remove cloud on title.

12. JURY.—Petition to annul decree quieting title, involving construction of early statutes relative to service of process on lunatic, *held* to present question of law and not to require jury trial.

13. JUDGMENT.—One moving in Court of Equity to vacate and set aside decree must show that some injustice has been done.

Before A. L. GASTON, Special Judge, Fairfield, June, 1922. Affirmed.

Petition by Thomas M. Cathcart and others, as heirs at law of John H. Cathcart, deceased to set aside, vacate, and annul a decree in a cause entitled *Mary A. Kerr v. John H. Cathcart,* which petition was opposed by J. Marvin Jennings and others. Judgment for J. Marvin Jennings and others, and petitioners appeal.

The judgment of Hon. A. L. Gaston, special presiding Judge of the Circuit Court, was as follows:

"On the 8th of March, 1890, a final decree and judgment was rendered by Judge J. J. Morton in the case of Mary A. Kerr against Ellen Cathcart and John H. Cathcart, in the Court of Common Pleas for Fairfield County, and is now entered as judgment roll No. 1712. Reference to this judgment roll shows that the summons, dated January 15, 1890, was lodged in the office of the Sheriff of Richland County, this State, on January 16, 1890, and served on said date by the sheriff thereof, together with the complaint and a notice to procure a guardian *ad litem* upon the defendant John H. Cathcart personally, at the State Lunatic Asylum in Columbia, S. C., where he was confined as a lunatic. The defendant Ellen Cathcart acccepted in

writing service of the summons and complaint. The notice to the defendant John H. Cathcart sets forth that, unless he procures a guardian *ad litem* within 20 days from the service of the summons upon him that application will be made to Judge I. D. Witherspoon of the Sixth Circuit at Yorkville on the 13th of February next, at 10 o'clock forenoon, as as soon thereafter as counsel can be heard, for an order appointing a guardian *ad litem* in his behalf.

"A petition was thereafter filed by the plaintiff through her attorney, setting forth that the action had been commenced for the purpose of quieting title of the plaintiff to a lot in Winnsboro, S. C., containing about 3 acres described in the complaint, that the summons and complaint had been served upon the defendant John H. Cathcart, who has been judicially declared a lunatic, and was then in the custody of the South Carolina Lunatic Asylum, and, although more than 20 days had elapsed since the service of the summons and complaint upon him, no application had been made in his behalf for the appointment of a guardian *ad litem;* that James Glenn McCants is a competent person to protect the rights of the said lunatic, has no interest adverse to the lunatic, and is not connected in business with the attorney of the adverse party, and prays for his appointment. The consent in writing of James Glenn McCants is indorsed upon the petition. On the 21st of February, 1890, an order for the appointment of James Glenn McCants as guardian *ad litem* was granted by Judge J. J. Norton, presiding Judge. A formal answer was filed by the guardian *ad litem*.

"The complaint alleges:

"That the plaintiff had bought 3 acres of land in the town of Winnsboro from the defendant Ellen Cathcart, for value, on January 20, 1881, and received a deed in fee thereto, and that both parties believed and intended the deed to convey the fee. That the plaintiff had an offer in December, 1889, to sell the land to the Winnsboro Cotton Mills, and recently

discovered a cloud upon her title existed, by reason of the following facts, to wit:

"That on the 9th of April, 1859, a judgment was obtained by the president and directors of the Bank of South Carolina against Richard Cathcart (now deceased), and on August 2, 1869, execution was issued and a tract of land containing 50 acres, of which the 3-acre tract (of the plaintiff) is a part, was sold thereunder on September 6, 1869, and conveyed by the sheriff to the defendant John H. Cathcart as trustee for $830; that said John H. Cathcart bid off said land and took title as trustee at the request of the defendant Ellen Cathcart, and was to hold the land upon such trusts as he should thereafter declare, with the understanding that he should hold the title until Ellen Cathcart paid him $830, the purchase money for the land; and that she did thereafter pay him the full amount of $830, and also $6 for the fee of the sheriff's deed and recording it, and a receipt therefor was indorsed by John H. Cathcart upon the sheriff's deed, and that John H. Cathcart, instead of declaring that he so held the land, made an indorsement upon the sheriff's deed in these words:

" 'I John H. Cathcart, do hereby declare that I hold the within described tract of land for the following uses, to-wit: For my own proper use and behoof until Mrs. Ellen Cathcart, wife of Richard Cathcart, shall pay me the sum of $830, and on and after such payment for the sole and separate use of the said Ellen Cathcart as her trustee for and during the term of her natural life, and after her death for her issue who may survive her and the issues of deceased children they taking per stirpes, the said land to be sold for a change of investment whenever she shall desire it and I approve it.'

"The complaint further alleges that this declaration of trust was made by him without the knowledge or consent of Ellen Cathcart, and was contrary to her wishes, and she had repaid the purchase money in her own right, expecting

to receive a fee-simple title, and that said Ellen Cathcart did not discover that the declaration of trust had been made with limitations until December, 1889, and she is now an aged and childless widow.

"The complaint further alleges that John H. Cathcart, since the making of the declaration of trust, has been judicially declared of unsound mind, and therefore prevented from legally correcting the erroneous declaration of trust, and that the defendant Ellen Cathcart is willing that the cloud be removed from plaintiff's title; and the complaint prays that the declaration of trust, so far as it affects the premises held by the plaintiff, be adjudged inoperative and void, and that the plaintiff be adjudged to hold her 3 acres of land in fee simple, discharged from all the trusts, limitations, and conditions contained in the declaration of trust, and for such other and further relief as may be just.

"The defendant Ellen Cathcart also filed an answer in which she admits the allegations of the complaint, and further says that the tract of land, of which the lot described in the complaint is a part, was formerly owned by her huband, the late Richard Cathcart, deceased, and was levied upon under judgment and sold by the sheriff to John H. Cathcart as trustee, and that she had requested him, on the morning of the day of sale, to bid off and hold this land as trustee until she could repay him the purchase money and expenses of the sale, because she wanted to retain the property on which she and her husband then resided as a home, and it was agreed between them that he should retain the rents in lieu of interest, and that she did repay the purchase price on the 11th of January, 1873, and also $6 to cover the costs of the sheriff's deed and recording; that she always understood that she was buying the fee, and relied upon John H. Cathcart, and was ignorant of the fact of the declaration of trust, which was made without her knowledge or authority and she did not discover it until November or December, 1889, and that she never

would have accepted only a life estate in the land for which she paid the full purchase money; and, by her answer, prayed that the declaration of trust, in so far as it deprived her of the fee, be declared null and void, and that the clerk do execute a deed to her in fee of all the interest in remainder of John H. Cathcart in the premises.

"Judge Norton, on hearing the complaint and answers, and with the consent of the attorney for the defendant Ellen Cathcart, and the guardian *ad litem* of the defendant John H. Cathcart, ordered, on Febuary 22, 1890, that a referee take the testimony and report his conclusions of fact to the Court, and this order of reference was on Feburary 28, 1890, with the consent of all parties, followed by an order of Judge Norton amending the first order of reference to require the referee to take the testimony only and report it to the Court.

"A full report of all testimony appears in the record, including the evidence of Mrs. Ellen Cathcart, who testified, among other things, that John H. Cathcart bid off the land at her request and retained possession of the land until she repaid him the purchase money in 1873, when she went into possession of the land, and got possession of the sheriff's deed and the receipt, and that she built a house on the land costing her $2,300. Mr. A. S. Douglass testified that John H. Cathcart was adjudged a lunatic by the probate Court on August 27, 1874, in a proceeding instituted in June, 1874, also that the declaration of trust was in the handwriting of Col. James H. Rion, since then deceased, and that the receipt is in the handwriting of John H. Cathcart, and both writings were indorsed in the sheriff's deed. It was also admitted before the referee that the sheriff's deed and declaration of trust are both recorded in the clerk's office, and that Mrs. Ellen Cathcart has no living children, and her only son, William, died in 1875, aged 26 years. Her husband died in August, 1870.

"The record further shows that Mr. McCants, the guardian *ad litem,* was present at all the hearings before the referee, and took part therein, and was especially vigilant in objecting to the testimony between the parties under Section then 400 of the Code. The final decree of Judge Norton also sets forth the fact that the guardian *ad litem* forcibly argued his objections at the hearing by the Court. The final decree of Judge Norton of date March 8, 1890, holds that John H. Cathcart purchased the tract of land described in the deed from the sheriff to John H. Cathcart trustee (of which the plaintiff's 3 acres is a part), as the agent of Ellen Cathcart and for her use and benefit, and, when he sought to limit the estate of his principal (without her knowledge or consent) to an estate for her life, with contingent remainder to her issue, he exceeded his power and authority as her agent. The decree also holds that the reversion does not go to John H. Cathcart and his heirs, but that he held only as trustee, and that the plaintiff under the deed from Ellen Cathcart took a good title to the reversionary interest of the grantor to the trustee.

"The decree thereupon adjudged that John H. Cathcart had no title in the premises described in the complaint, that the plaintiff under her deed acquired a title in fee to the land conveyed to her, and that the declaration of trust be so modified to accord with the intention of the parties that, when Ellen Cathcart had fully repaid to John H. Cathcart the purchase money he had paid to the sheriff, then the title passed through John H. Cathcart to her in fee simple. No appeal was taken from this decree of Judge Norton, and it is the final judgment in that cause.

"The matter now comes before the Court upon the petition of Thomas M. Cathcart, Mary A. Cathcart, and William M. Cathcart as heirs at law of John H. Cathcart, deceased, in the original cause to set aside, vacate, and annul the decree of Judge Norton. The attack is made before the Court upon the final judgment in the original

case. The grounds of attack are set forth at length, and the issues are made against the validity of the judgment, on the grounds principally that the appointment of the guardian *ad litem* of John H. Cathcart, who was a lunatic confined in the State Hospital for the Insane at Columbia, S. C., was not properly made and the Court had no jurisdiction of him as a defendant; also that the judgment is void because the record shows on its face that the Court had no jurisdiction of the cause of action to remove the cloud from the title to the land described in the complaint; also that the final judgment exceeded the demand for relief in the complaint and adjudicated the title to the entire 50 acres of land, of which the 3 acres described in the complaint was a part; also on the ground that the answer of the defendant Elllen Cathcart was not served upon the guardian *ad litem,* or the defendant John H. Cathcart, and the Court had no jurisdiction to determine the issues raised by the answer which were not set up in the complaint.

"The respondents are at present owners of separate parcels of the original 50-acre tract of land conveyed by the sheriff to John H. Cathcart, trustee; and they are defendants in other suits by the movants against them for the recovery of the land held by them; and their rights depend therefore upon the validity of the original judgment, now under attack.

"The service of the summons, complaint, and notice upon John H. Cathcart was made by the Sheriff of Richland County on January 16, 1890, at the State Lunatic Asylum, in Columbia, S. C., by delivering copies thereof to him personally. No application was made in his behalf for the appointment of a guardian *ad litem.* He neglected to apply for the appointment of a guardian *ad litem* within 20 days, or at any subsequent date. The right to have a guardian *ad litem* of his own selection was not denied him, but ample notice was given to enable him to apply for the appointment of any one of his choice.

The service of the summons and other papers was complete and strictly according to the statute law; for there is no claim or contention that he had a general guardian or committee at this time, upon whom service could or should be made, and no evidence to support such a contention if made. If he had relatives at the time who were interested in his behalf, it was their duty to apply for a guardian *ad litem,* if they saw fit, to be appointed, within the 20 days after the service upon him of the summons and notice, and there was no duty upon the plaintiff to serve the notice upon any of these. Nor could the said John H. Cathcart be misled in any way by the terms of the notice, or beguiled into any inaction on his part and into failure to apply himself for a guardian *ad litem.* The Court, therefore, proceeded in a proper manner to appoint J. G. McCants as guardian *ad litem.* By the service of the summons, the Court acquired jurisdiction of the person of the said John H. Cathcart, and the requirements of the law intended for the protection of the rights of a lunatic defendant were fully met when Mr. McCants was duly appointed.

"The notice, as served upon Cathcart, not only required him to procure, within the 20 days, a guardian *ad litem* of his own selection and choice, but expressly advised him that, if he failed to do so, application would be made on a day fixed, or as soon thereafter as counsel can be heard, to the Court. Whether, therefore, the order for the appointment was made by Judge Witherspoon at Yorkville at chambers, or by Judge Norton at Winnsboro at the next regular term of Court cannot invalidate the judgment in the case, and furnishes no ground for attacking the jurisdiction of the Court over the person of the defendant in the suit. The Court was clearly mindful of the rights of the defendant and aware of the fact of his disqualification, confinement, and inability to care for himself, and fully protected him from being taken advantage of or defrauded by the appointment of a guardian *ad litem,* who did his full duty through-

out the case, as shown by the record, in answering and contesting every issue raised against the defendant.

"The appointment of the guardian *ad litem* by the Court at Winnsboro instead of by the Judge at chambers at Yorkville did not affect the jurisdiction of the Court, of the person of the lunatic after personal service of the summons upon him, but at most was merely a matter of error, omission, or irregularity subsequent to the acquiring of jurisdiction, and will not avoid the judgment, where no injustice results to the lunatic, and the rights of innocent parties have been acquired under the judgment *Mohr v. Manierre,* 101 U. S., 421; 25 L. Ed., 1052. *Barfield v. Barnes,* 108 S. C., 10; 93 S. E., 425. *Middleton v. Stokes,* 71 S. C., 21; 50 S. E., 539. *Cathcart v. Sugenheimer* 18 S. C., 129. The *Roundtree case,* 51 S. C., 405; 29 S. E., 66, and *Kibler case,* 53 S. C., 461; 31 S. E., 274, are not in point because no guardian *ad litem* was appointed in these cases, and it was not pretended that the defendant was represented by a guardian *ad litem.*

"Nor does the suggestion that he was defrauded apply with much force when it is manifest that the declaration of trust did not expressly create a reversionary interest to the land in him, and it is apparent that he took title to the land as trustee, and not as own; that holding as trustee he could not hold for himself, and could not assert an interest against his *cestui que* trust in his own behalf; that he bid in the land in a trust or fiduciary capacity similar to that of an attorney or agent and client; that the entire purchase money was repaid to him; that the land was the property of Richard Cathcart, who was badly in debt, and was bid in to save a home for his wife, Ellen Cathcart; that its value was increasaed by valuable improvements made by Ellen Cathcart. Under these existing facts it was either unintentional and inadvertent to fail by the declaration of trust to convey the entire title in fee to Ellen Cathcart and her issue, or it was a deliberate concealment

from her of the secret retention, of a reversionary interest without consideration, and in violation of a sacred duty as trustee to hold the property for her benefit until she repaid the purchase price, and in violation of such a trust agreement between them. It is not reasonable to suppose that John H. Cathcart would deliberately take advantage of his title to the land as trustee, to retain an interest therein in his own behalf; and it is more reasonable to conclude that neither party intended such a result when the declaration of trust was executed, or knew that in any event could be the result. John H. Cathcart was not in a position under theses facts, to assert, an interest in the lands, had he been sane and defending the suit in his own right.

"It must be concluded that the declaration of trust was not the expression of the purpose or intention of either party, but, by mistake or without the knowledge of either of them, failed to carry out their wishes and agreement, thus leaving a defect in the title, which was a cloud upon the title. I am convinced that Mr. Cathcart, who of course did not testify in the case, did not intend to commit a breach of his trust, and a wrongful violation of the rights of Ellen Cathcart and those who held under her. Yet this would be the alternative view if the declaration of trust was not a mutual mistake, and unintentional failure to fully carry out the original understanding. The death of the only son and issue of Mrs. Ellen Cathcart, in 1875, left only the life estate in her under the declaration of trust, and the interest in remainder or reversion to be disposed of by the trustee according to the agreement of the parties, and he could never assert a legal title in his own behalf, or in behalf of his heirs at law, because the title was in him, under the sheriff's deed, only as trustee in trust for such uses as he may hereon declare, and a failure to make a declaration disposing of the entire fee was contrary to the written instrument itself and deed of

the sheriff under which he held as trustee, and not otherwise.

"Such a situation clearly constituted a cloud upon 6, 7 the title of Mary A. Kerr to the land she acquired. She held title, it is true under the deed of Ellen Cathcart, who undertook to convey the fee; and such a holding of title was with notice of the declaration of trust, but also with knowledge that the sheriff's deed created only a trust estate in John H. Cathcart, and there was no notice that he claimed any right of reversion in his behalf, and in fact no legal right on his part to make such a contention so that the suit by Mary A. Kerr did not attempt to destroy any title in Cathcart, nor deprive him of any property rights. It is argued by the movants that a Court of equity will not permit the property of an infant or lunatic to be disposed of, until it is shown to be advantageous to them, and this is sound law. But a suit to remove as trustee of an estate of another, one who has become insane, would certainly not be advantageous to the lunatic, yet the Court would unhesitatingly take jurisdiction in a suit for this purpose and remove the trustee. The Court of Common Pleas has jurisdiction to compel an infant trustee to convey an estate in lands, when held only in trust for another under Section 3693 of the Code of 1912. So that the control of trust estates is peculiarly one of equity jurisdiction.

"The cloud upon the title of Mary A. Kerr arose 8 because there was no full declaration of trust by the trustee, and not by reason of any title in behalf of the trustee. She could not accept an offer to sell her land, to which she had a fee-simple deed, because the proposed purchaser was unwilling to accept her deed until the trust estate fully set forth or declared in keeping with the intention of the parties, and the language of the sheriff's deed. It was necessary to invoke the aid of a Court of equity to remove this cloud, or to quiet her title. The proper and necessary parties defendants to such a suit were

the grantor of Mary A. Kerr, namely Ellen Cathcart, and the trustee, John H. Cathcart. Both of them were properly made parties and duly served with the summons and complaint. The issues in the case were made up by all of the pleadings and not by the complaint alone. The guardian *ad litem* answered, and so did Ellen Cathcart; both answers were before the Court.

"The judgment is not in excess of the relief demanded, because the facts stated in the complaint were sufficient to warrant judgment for the removal of the cloud upon plaintiff's title, by decreeing that the declaration of trust did not express the rights and intention of Ellen Cathcart; that the instrument was an entirety, and not merely a partial limitational affecting the 3 acres held by plaintiff one way, and the rest of the land another way it necessarily had to be adjudicated in its entirety as to its validity and proper construction, force, and effect, and not by piecemeal and if it created no reversionary interest in John H. Cathcart as to the 3 acres, it could not create any such right to the rest of the 50 acres. Furthermore, the judgment was rendered, not by default, but by the Court after both answers were before the Court, and a full determination and consideration of all issues. The cases cited of *Ross v. Carroll,* 33 S. C., 202; 11 S. E., 760, and *Cantrell v. Fowler,* 24 S. C., 427, were default judgments, and the only issues arose by the complaint; yet the Court expressed a doubt in the *Ross case* that the judgment would thereby be renderd void, but only erroneous, subject to correction by appeal, or perhaps by a motion in the case.

"It is well settled that, if the record shows upon its face that the Court had jurisdiction of the subject matter, and also jurisdiction of the parties defendant, then no judgment rendered in the action could be void, or at most would only be voidable, if sufficient grounds show it to be such.

"Prior to the adoption of the Constitution of 1868, and the Code of Civil Procedure, Courts of equity unquestionably had jurisdiction of suits in equity to remove a cloud upon title. In 3 Pomeroy's Equity Jurisprudence, § 1398, it is said:

" 'The jurisdiction of Courts of equity to remove clouds from title is well settled; the relief being granted on the principle *quia timet;* that is, that the deed or other instrument or proceeding constituting the cloud may be used to injuriously, or vexatiously embarrass or affect a plaintiff's title.'

"That was certainly the law prior to the adoption of the Constitution of 1868, and since that time our own Supreme Court has declared with equal emphasis that a Court of equity has jurisdiction to remove a cloud upon title. *Ketchin v. McCarley,* 26 S. C., 1; 11 S. E., 1099; 4 Am. St. Rep., 674; *Kittles v. Williams,* 64 S. C., 232; 41 S. E., 975; *Shute v. Shute,* 79 S. C., 420; 60 S. E., 961.

"In *Trustees v. Trustees,* 85 S. C., at page 556; 67 S. E., 955, it was held that power to remove a cloud upon title was a well-known branch of equity jurisdiction. 'This constitutes a cloud upon petitioner's title which it is the province of equity to remove. Generally the Courts grant relief by cancellation or amendment of an instrument creating the cloud over the title, but, where the nature of the written document is such that this cannot be done, the Court may make such other decree as justice may require.'

" 'Respondents finally contend that upon the case as presented they are entitled to a trial by jury on the issue of title to the land involved. We think not. The question involved is really one of law dependent upon the construction of the Statutes of 1816 and 1833 and the undisputed facts which are susceptible of but one inference. Assuming that ordinarily an issue of title arising in the original jurisdiction of this Court would be sent to the Circuit Court

for trial by jury, the Court would not do so when really nothing but an issue of law is involved. *Windham v. Howell,* 78 S. C., 192 [59 S. E., 852],' also *Earle v. Maxwell,* 86 S. C., 1; 67 S. E., 962; 138 Am. St. Rep., 1012. 1012.

"There is no showing of merits on the part of these movants, or of any right upon their part to invoke a Court of equity to vacate and set aside this decree. Such showing is required by the law. It is incumbent upon the movants to show that some injustice has been done them, and there is an utter failure of proof of any kind showing such to be the case. *Robertson v. Blair,* 56 S. C., 96; 34 S. E., 11; 76 Am. St Rep., 543; *Sarratt v. Mfg. Co.* 77 S. C., 85; 57 S. E., 616; *Baker-Jennings v. Culp,* 105 S. C., 421; 90 S. E., 26.

"After a careful consideration of all the grounds of attack upon the judgment, I am convinced that no substantial wrong or injustice has been done to Mr. John H. Cathcart, who is now deceased, nor to his heirs at law, who are now the petitioners before the Court. The original judgment seems to me to have been proper and is fully sustained by all of the facts in the record. The petitioners have raised a large number of objections to the validity of the judgment, and I have endeavored to consider all of them, although perhaps I have not mentioned each of them separately in this decree. There is certainly nothing in the case to show that Mr. John H. Cathcart ever claimed any interest for himself in the land, after he received the purchase money from Mrs. Ellen Cathcart. At that time he delivered to her the sheriff's deed and put her in possession of the land and saw her make improvements upon it, which are not inconsistent with the idea that the reversionary interest was vested in him in a remote way, but at the same time he did not recognize the fact that after the purchase price was paid to him that the muniments of title and the land both went to her, without any reservation on his part

being expressed at any time. There is no question in my mind that John H. Cathcart had no thought of taking any advantage of Mrs. Ellen Cathcart, and he seemed to recognize that he was merely acting as her trustee to help her save her home, which he did in a highly honorable way throughout. There is nothing in the record anywhere to show that he made any claim to the contrary, except the declaration of trust, which does not express any such intention, but is merely silent in regard to the reversion in the land. Therefore the final decree of Judge Norton was a full adjudication of all rights in his behalf, and there is absolutely no ground to set aside this judgment under which Mr. John H. Cathcart bid in this land as a verbal contract, resting in parol alone, because the sheriff's deed and the declaration of trust, both being written instruments, clearly show that his interest was merely that of a trustee and nothing further.

"This case was heard by me while holding Court as special Judge at the summer term, 1922, at Winnsboro, S. C., but the attorneys for all parties requested further time to submit written arguments and authorities, and therefore the decision of the case was delayed for some time thereafter. Therefore the decision is now made *nunc pro tunc.*

"On the consideration of the whole case, and due deliberation of the entire matter, it is adjudged and decreed that the final decree and judgment, rendered on March 8, 1890, in the case of Mary A. Kerr against Ellen Cathcart and John H. Cathcart, above referred to, is valid and should be, and hereby is, sustained."

*Messrs. G. W. Ragsdale* and *T. M. Cathcart,* for appellants cite: *Collusive judgment void:* Civ. Code 1912, Sec. 3455. *Statute of Frauds:* Civ. Code, 1912, Sec. 3735, 3736 and 3737. *Creation of trusts in lands to be in writing:* Civ. Code 1912, Sec. 3676. *In action to remove cloud on title complaint must allege title or possession in plaintiff:* 125 Ala., 340;

27 So., 839; 82 Ala., 595; 2 So., 513; 64 Ala., 375; 56 Ala., 211; 3 Brick. Dig., Sec. 375. *Leave of Court to sue adjudged lunatic necessary:* 26 Barb. (N. Y.), 172; 2 Hun. (N. Y.), 671. *Same; complaint must so allege:* Baylies Code Pl. & Forms, Ed. of 1890, 132; 72 N. Y., 491; 20 Hun., 527; 86 N. Y., 634. *Proceedings by Court without jurisdiction void:* 108 S. C., 305; 13 S. C., 371. *Order cannot be made without notice to any party prejudiced by it*: 108 S. C., 306; 13 S. C., 371; 7 S. C., 235. *Party having interest adverse to infant not proper guardian al litem:* 45 S. C., 323; 23 S. E., 64. *Notice and opportunity to be heard essential to due process of law:* 108 S. C., 305; 7 S. C., 235; 70 Mass., 63; 14 Mass., 222; 4 Mason 121; 2 N. J. Eq., 3; 3 Gray 63; 32 Ark., 627; 64 Ga., 298; 12 Ala., 825; 15 Ill., 336; 5 Pick., 217; 130 Ind., 555; 30 N. E., 523; 125 Ind., 46; 24 N. E., 662; 39 W. Va., 303; 19 S. E., 624; 23 L. R. A., 737; 45 A. S. R., 912; 86 Va., 763; 11 S. E., 123; 21 R. C. L., 1262. *Service on defendant in State Lunatic Asylum:* Code Civ. Pro. 1912, Sec. 185; 148 Iowa, 453; 126 N. W., 909; 125 Iowa, 670; 101 N. W., 510; 80 Iowa, 336; 45 N. W., 1030; 27 Ore., 282; 40 P., 511; 50 A. S. R., 726. *Right to jury trial of title to land not to be defeated by the bringing of this action:* Story on Eq. Jur., Sec. 859; Pomeroy on Eq. Jur., 2nd Ed., Secs. 246, 248, 252-254, 263, 1394 and 1396. *Judgment void where record shows on its face that judgment based on void contract:* 27 S. C., 525; 4 S. E., 229; 27 S. C., 425; 3 S. E., 790; 26 S. C., 517; 2 S. E., 402; 16 S. C., 92; 15 S. C., 581; 2 Pomeroy on Eq. Jur., 2nd Ed., Secs. 945 and 1121; 2 Story on Eq. Jur., Ed. of 1857, Secs. 1367 and 1397, Story on Sales, Ed. of 1853, Secs. 9, 40 and 44; Kerr on Law of Fraud & Mistake, Ed. of 1872, 148; Bishop on Contracts, Ed. of 1878, Sec. 155; 1 Addison on Contracts, Ed. of 1881, Secs. 170 and 176. *Lapse of time no bar to setting aside void judgment:* 97 Cal., 388; 30 P., 452; 74 Cal., 400; 16 P., 196; 38 Mon., 166; 99

P., 291; 145 N. C., 234; 58 S. E., 1070; 222 Pa. St., 311; 58 Kan., 118; 48 P., 569; 38 Minn., 341; 37 N. W., 585; 32 Wash., 700; 80 P., 559; 128 Ala., 649; 30 So., 630; 88 F., 768.

*Messrs. McDonald & McDonald* and *W. D. Douglas,* for respondents, cite: *Jurisdiction of subject matter defined:*123 N. C., 19; 68 A. S. R., 815; 15 R. C. L., 844. *Judicial power of State vested:* Const. 1868, Art. 4, Sec. 1. *Jurisdiction of Common Pleas:* Const. 1868, Art. 4, Sec. 15. *Distinctions between law and equity abolished:* Const. 1868, Art. 5, Sec. 3; Code Civ. Pro. of 1870. *Jurisdiction of equity Court to remove cloud on title:* 105 S. E., 767; 104 S. E., 273; 86 S. C., 7; 85 S. C., 546; 79 S. C., 420; 64 S. C., 229; 26 S. C., 1; 3 Pomeroy on Eq. Jur., Sec. 1398. *Commencement of civil actions:* Code Civ. Pro. 1922, Sec. 383. *How summons to be served:* Code Civ. Pro. Sec. 390. *Same; on adjudged lunatic:* Code Civ. Pro. Sec. 390, Sub. 3. *Court acquires jurisdiction by service of summons:* Code Civ. Pro. 1922, Sec. 396. *After acquisition of jurisdiction of defendant any irregularity in appointment of guardian ad litem does not affect jurisdiction of Court:* 108 S. C., 10; 71 S. C., 17; 56 S. C., 96; 23 S. C., 166. *Court to appoint guardian ad litem for lunatic defendant:* Code Civ. Pro. 1922, Sec. 392. *Irregular and erroneous judgments distinguished: power to vacate irregular judgment:* 144 Cal., 463; 103 A. S. R., 91; 94 Va., 760; 64 A. S. R., 777; 54 A. S. R., 218; 1 Bailey's Eq., 324; 1 Bailey's Eq., 107; 15 R. C. L., 739; 1 Black on Judgments, Secs. 170, 244, 329 and 363. *As to service of answers of co-defendants on lunatic defendant:* 128 S. C., 39. *Movants to vacate judgment must show some injustice done them:* 105 S. C., 421; 77 S. C., 85; 56 S. C., 96; 1 Bail. Eq., 324; 1 Bail. Eq., 283; 1 Bail. Eq., 179; 1 Bail. Eq., 113; 1 Bail. Eq., 108. *Reversion and possibility of reverter distinguished:* 23 R. C. L., 1100; 2 Blackstone Com., 175; 1 Tiffany on Real Property, 394. *Re-*

*version of remainder inheritable by heirs of reversioner or remaindeman:* 1 Tiffany on Real Property, 153; 2 Tiffany on Real Property, 1892. *Actual seisin of ancester having present title to estate not necessary to inheritance from such ancester; heirs living at death of ancester take:* 32 S. C., 77; 6 Rich. Eq., 37; 4 Rich. Eq., 416; 4 Rich. Eq., 413; Harper's Eq., 281; Perry on Trusts, Secs. 157, 159 and 160. *Erroneous judgment only correctible by appeal:* 90 S. C., 229; 62 S. C., 506; 33 S. C., 202. *Plaintiffs guilty of laches in moving to vacate judgment:* 106 S. C., 310; 98 S. C., 409; 97 S. C., 220; 72 S. C., 505; 62 S. C., 89; 43 S. C., 436; 24 S. C., 99; 21 S. C., 112; 4 Rich. Eq., 357. *Exceptions setting forth no error of law will not be heard on appeal:* Sec., 6. Rule 4 of Supreme Court: 126 S. C., 266; 122 S. C., 69; 116 S. C., 375; 100 S. C., 267; 97 S. C., 291; 93 S. C., 367; 51 S. C., 306; 45 S. C., 494; 39 S. C., 296; 19 S. C., 598; 16 S. C., 155.

November 1, 1926.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons assigned by Hon. A. L. Gaston, special Judge, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE and STABLER and MR. ACTING ASSOCIATE JUSTICE RAMAGE concur.

MR. CHIEF JUSTICE GARY did not participate.