22066

Robert W. CARTER, Respondent, v. The SOUTH CAROLINA COASTAL COUNCIL, Appellant.

(314 S. E. (2d) 327)

Supreme Court

*James H. Quackenbush,* Columbia; and *Christopher McG. Holmes,* Charleston, *for appellant.*

*Augustine T. Smythe,* of *Buist, Moore, Smythe & McGee,* Charleston, *for respondent.*

*Mary Lowndes Bryan,* Columbia, *amicus curiae for Natural Resources Defense Council.*

Heard Feb. 9, 1984.

Decided March 26, 1984.

NESS, Justice:

Respondent Robert W. Carter applied for a permit to raise the elevation of approximately 5.3 acres of marshland adjacent to Scott Creek at Edisto Island in Colleton County. This request was denied by the appellant South Carolina Coastal Council. The circuit court reversed appellant's decision.

Appellant South Carolina Coastal Council now contends the circuit court erred in concluding the Council's original determination was (1) not supported by substantial evidence in the record; and (2) an unreasonable exercise of the State's police power. We agree with appellant's contention and reverse.

Appellant first argues its denial of respondent's permit request was not erroneous in view of the substantial evidence in the record. We agree.

S. C. Code Ann. § 48-39-180 (1983 Supp.) provides that any applicant whose permit application is denied may petition the circuit court for a "de novo" review of the Council's action. In

*Guerard v. Whitner*, 276 S. C. 521, 522, 280 S. E. (2d) 539, 540 (1981), we determined the "de novo" review required by this section did not entail a "hearing of all the evidence anew." Rather, "the substantial evidence standard for judicial review, as stated in [S. C. Code Ann.] § 1-23-380(g) (1983 Supp.) is the proper standard for review of actions by the Coastal Council," as the Council is "clearly an 'agency' defined by § 1-23-310(1) of the Administrative Procedures Act...." *Id.*

S. C. Code Ann. § 1-23-380(g), which establishes the standard for judicial review in these matters, provides:

> The court shall not substitute its judgment for that of the agency as to the weight of the evidence on the questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record....

Substantial evidence "is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached...." *Lark v. Bi-Lo, Inc.*, 276 S. C. 130, 135, 276 S. E. (2d) 304, 306 (1981); *accord, Schudel v. S. C. ABC Commission*, 276 S. C. 138, 276 S. E. (2d) 308 (1981); *Henderson v. West Point Pepperell, Inc.*, 279 S. C. 171, 303 S. E. (2d) 859 (1983). "It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury...." *Lark, supra*, 276 S. E. (2d) at 307, quoting, *Consolo v. Federal Maritime Commission*, 383 U. S. 607, 620, 86 S. Ct. 1018, 1026, 16 L. Ed. (2d) 131 (1966). Substantial evidence exists "unless there is no reasonable probability that the facts could be as related by a witness upon whose testimony the [agency's] finding was based." *Lark v. Bi-Lo, Inc., supra*, 276 S. E. (2d) at 307.

The trial court decided the Coastal Council's refusal to grant the permit was not based on substantial evidence. We disagree, as the record is replete with evidence illustrating the detrimental environmental conse-

quences of respondent's proposed plan. While we recognize
the record could support a decision contrary to that reached
by the Council, the mere "possibility of drawing two inconsis-
tent conclusions from the evidence does not prevent an admin-
istrative agency's finding from being supported by substan-
tial evidence." *Id.* We hold this evidence was substantial
within the meaning of the relevant scope of review and re-
verse the trial court's determination.

Appellant also contends the trial court erred in finding
Council's action constituted a "taking" of respondent's prop-
erty without compensation. We agree.

The police power of the State rests upon the fundamental
premise that every citizen must use his property so as not to
wrong or injure others. "Thus the ... [State] may properly
regulate the use of property where uncontrolled use would be
harmful to the public interest; and ... [this] regulation, even
though it prohibits a beneficial use, will not necessarily be
deemed a (taking) in the constitutional sense."[1] *Brecciaroli v.
Connecticut Commissioner of Environmental Protection,* 168
Conn. 349, 362 A. (2d) 948, 951 (1975); see also, *Goldblatt v.
Hempstead,* 369 U. S. 590, 82 S. Ct. 987, 8 L. Ed. 130 (1962);
*Richards v. City of Columbia,* 227 S. C. 538, 88 S. E. (2d) 683
(1955).

Controlling and restricting the filling of wetlands[2] is
clearly within the scope of the State's police power, as
the legislature enacted the Coastal Zone Management
Act in response to its recognition of the detrimental effect the
uncontrolled use of coastal wetlands would have on the public

---

[1] The State's police power should not be confused with its right to exercise
eminent domain. "The distinction between use of eminent domain and use of
the police power is that the former involves the taking of property because it
is needed for public use while the latter involves the regulation of the
property to prevent its use in a manner detrimental to the public interest,"
and does not require compensation for the property owner. *Pope v. City of
Atlanta,* 242 Ga. 331, 249 S. E. (2d) 16, 19 (1978).

[2] "... [A] private wetland does not have to be under the navigable water of
the state or below mean high tide; instead, it may be located above mean high
tide, and, therefore, on private land, as long as it borders on tidal water, is
subject to some tidal action, and supports aquatic growth." *Hirsch v. Mary-
land Department of Natural Resources,* 288 Md. 95, 416 A. (2d) 10, 13 (1980).

welfare.[3] While unquestionably respondent's wetland would have greater value to him if it were filled, "[a]n owner of land has no absolute and unlimited right to change the essential natural character of his land so as to use it for a purpose for which it was unsuited in its natural state and which injures the rights of others." *Just v. Marinette County*, 56 Wis. (2d) 7, 201 N. W. (2d) 761, 768 (1972); *Graham v. Estuary Properties, Inc.*, 399 So. (2d) 1374, 1382 (Fla. 1981). We hold the Council's action constituted a legitimate exercise of the State's police power, rather than an unreasonable "taking" of respondent's property.

Reversed.

LEWIS, C. J., and LITTLEJOHN, GREGORY and HARWELL, JJ., concur.

---

[3] In § 48-39-20(B) (1983 Supp.) of the Coastal Zone Management Act, the legislature found:

"The increasing and competing demands upon the lands and waters of our coastal zone occasioned by population growth and economic development, including requirements for industry, commerce, residential development, recreation, extraction of mineral resources and fossil fuels, transportation and navigation, waste disposal and harvesting of fish, shellfish and other living marine resources have resulted in the decline or loss of living marine resources, wildlife, nutrient-rich areas, permanent and adverse changes to ecological systems, decreasing open space for public use and shoreline erosion."