24121

SIERRA CLUB, Richard Geronimo, and Diether Klingelnberg, Appellants v. KIAWAH RESORT ASSOCIATES, South Carolina Coastal Council, and South Carolina Department of Health and Environmental Control, Respondents.

(456 S.E. (2d) 397)

Supreme Court

*James S. Chandler, Jr.,* Pawleys Island and *Daryl G. Hawkins* of *Lewis, Babcock & Hawkins,* Columbia, *for appellants.*

*C.C. Harness, III,* Charleston, *for respondent South Carolina Coastal Council; Samuel L. Finklea, III,* and *Walton J. McLeod, III,* Columbia, *for South Carolina Dept. of Health and Environmental Control; Thomas Dewey Wise, G. Trenholm Walker* and *Robert E. Ransom* all of *Wise & Cole, P.A.;* and *Ellison D. Smith, IV* of *Smith, Bundy & Bybee,* Charleston, *for respondent Kiawah Resort Associates.*

Reheard Nov. 2, 1994.

Decided Mar. 27, 1995.

TOAL, Justice:

We granted rehearing to consider our opinion in this case. The prior opinion in *Sierra Club v. Kiawah Resort Associates,* Op. No. 24121 (S.C. Sup. Ct. Filed July 18, 1994) (Davis Adv. Sh. 17 at 7), is vacated and the following substituted in its place.

Appellants appeal the circuit court order affirming the Coastal Council's issuance of thirty-six dock permits on Kiawah Island, the decision of the Department of Environmental Control to issue a 401 Water Quality Certification, and the circuit court's denial of an injunction. We affirm.

## FACTS

Kiawah Resort Associates (KRA) intends to develop a portion of Kiawah Island known as Rhett's Bluff. Rhett's Bluff borders on the Kiawah River and an unnamed tributary.

Consistent with Coastal Council's policy of encouraging developers to submit a comprehensive plan for development of waterfront property, KRA filed a permit application for seventy-eight docks in the Rhett's Bluff area. KRA met substantial resistance from the South Carolina Wildlife and Marine Resources Department, the United States Fish and Wildlife Service, the National Marine Fisheries Services, private groups, and members of the general public.

KRA re-drew its planned lots and amended its dock permit application to apply for thirty-six rather than seventy-eight docks. KRA also entered into an agreement with the South Carolina Wildlife and Marine Resources Department ("Wildlife Department") to place $50,000 in trust. The fund is to be used to defray the cost of protecting the shellfish in the area. In exchange, the Wildlife Department agreed to withdraw its objection to the permit application for the thirty-six docks.

Dock permits are usually issued at the administrative level of Coastal Council. In this case, however, because of the public response and the size of the project, Coastal Council requested a 401 Water Quality Certification[1] from the Department of Health and Environmental Control ("DHEC"). DHEC's staff issued the 401 Water Quality Certification. The Coastal Council's permitting committee then issued the per-

---

[1] A 401 Water Quality Certification assures that the project complies with section 401 of the federal Clean Water Act, 33 U.S.C. § 1341. A 401 Water Quality Certification is mandated for any project requiring a federal license or permit and which may result in any discharge into navigable waters. 33 U.S.C. § 1314 (1986). DHEC is the state agency responsible for conducting the 410 Water Quality Certification for any state licensed project requiring such a determination.

mit for thirty-six docks. Appellants appealed the permitting committee's issuance of the dock permits to the full Coastal Council. Appellants also appealed DHEC staff's issuance of the DHEC 401 Water Quality Certification to the DHEC Commission.

This matter involves two separate administrative determinations by two different administrative agencies, DHEC and the Coastal Council. Each final agency decision is at issue in this appeal.

The DHEC Commission refused to review the DHEC staff decision to issue the 401 Water Quality Certification. A hearing was held before the Coastal Council. The hearing officer for the Council recommended denial of the permit. In the alternative, the hearing officer for the Council recommended that the number of docks be reduced from thirty-six to twenty-one. The order of the hearing officer was appealed to the full Coastal Council. The full Council affirmed the permitting committee's issuance of the permit for thirty-six docks. Appellants appealed to the circuit court. Appellants also sought an injunction to prevent the building of the docks until the proceedings were concluded. The circuit court ordered the DHEC Commission to hold a hearing on the appeal of DHEC staff's issuance of the 401 Water Quality Certification. The circuit court also held in abeyance the appeal from the Coastal Council order and consolidated the appeal from the DHEC proceedings with the appeal from the Coastal Council order. Finally, the circuit court denied the injunction.

A hearing was held before the DHEC hearing officer on November 20 and 21, 1991. The hearing officer upheld the decision of the DHEC staff to issue the 401 Water Quality Certification. The full commission affirmed by order dated May 2, 1991.

An appeal of each agency's final determination was then taken to the circuit court. The circuit court affirmed both the DHEC Commission and the Coastal Council. This appeal followed.

## LAW/ANALYSIS

The appellants appeal (1) the issuance of the dock permit by Coastal Council, (2) the issuance of the 401 Water Quality Certification by DHEC, and (3) the denial of an injunction by the circuit court.

## A. DOCK PERMITS

Appellants claim that the order of the full Coastal Council is not supported by substantial evidence in the record. First, appellants claim that Coastal Council's conclusion that the docks will not significantly degrade and limit public access to the shellfish beds in the vicinity of the proposed docks is not supported by the evidence.

Coastal Council's Regulations regarding approval of dock permits provide in pertinent part as follows:

A. Docks and Piers:

(1) A dock or pier is a structure built over and/or floating on water and is generally used for the mooring of boats. Docks and piers are the most popular method of gaining access to deep water. Although they are least objectionable from an ecological point of view, docks and piers sometimes pose navigational problems, restrict public use of the water and, under certain circumstances, possess potential for creating environmental problems.

(2) The following standards are applicable for construction of docks and piers:

(a) Docks and piers shall not impede navigation or restrict the reasonable public use of State lands and waters;

(j) Where docks and piers are to be constructed over tidelands utilized for shellfish culture or other mariculture activity, the Council will consider rights of the lessee and the public prior to approval.

23A S.C. Code Ann. Regs. R. 30-12 (1976).

Under the Coastal Council regulations, the "dock . . . shall not . . . restrict the reasonable public use of the State's lands and waters." *Id.* The only public access to Rhett's Bluff is by boat. The owners of the property keep the public out over land by means of a gate.

The Permit Administrator, Mr. Moore, testified that each item in the above-cited regulation was considered by Coastal Council. He testified that the thirty-six docks will have some impact on the public use of the oyster beds but that the impact would not be significant. On cross-examination, Mr. Moore testified that he would not gather oysters in the vicinity of a private dock.

While there was evidence that the docks would impair public access to the oysters, there was also testimony that the burden on the public's access was not substantial. The full Council is the ultimate finder of fact and may make its own findings adverse to those of the hearing officer. *Ross v. American Red Cross*, 298 S.C. 490, 381 S.E. (2d) 728 (1989). The role of this Court is to determine whether the ruling of the Coastal Council is supported by substantial evidence. *Lark v. Bi-Lo*, 276 S.C. 130, 276 S.E. (2d) 304 (1981). "Substantial evidence is, considering the record as a whole, evidence which would allow reasonable minds to reach the conclusion that the administrative agency reached." *Carter v. South Carolina Coastal Council*, 281 S.C. 201, 314 S.E. (2d) 327 (1984). While the evidence before the commission was conflicting as to the impact on public access to the oysters beds, the decision of the full Council to grant the dock permits is supported by the record before us.

Next, Appellants contend that the findings of fact of the Coastal Council in *Weaver v. South Carolina Coastal Council*, 309 S.C. 368, 423 S.E. (2d) 340 (1992) and this case are in conflict. The permit at issue in *Weaver, supra,* was for a dock in a different location than the permits at issue here. The factual findings in *Weaver, supra,* as here, were based upon the testimony at the hearing. We find no merit to this issue.

Appellants next claim that the agreement between the Wildlife Department and the developer will not alleviate the impact of the docks.

S.C. Code Ann. § 48-39-150(A)(9) provides that the Coastal Council must look at "[t]he extent to which all feasible safeguards are taken to avoid adverse environmental impact resulting from a project." Thus, the Coastal Council is mandated by statute to consider impact on the oysters from the project and any feasible measures to avoid an adverse impact.

In its conclusions of law, the Coastal Council held

Council has considered, in conjunction with the SCWMRD [S.C. Department of Wildlife], the shellfish grounds that will be affected by the proposed project and have determined that there will not be significant negative impacts on the shellfish grounds. As added insurance, the permittee has agreed to provide monies in the

amount of $50,000.00 and a specific management plan to insure there is no reduction in the quality of the shellfish grounds. The agency charged with management of the oyster resource is satisfied with the issuance of the permit.

*Sierra Club v. Kiawah Resort Assocs.*, Order of Coastal Council, dated April 19, 1991, ROA at 86.

In its findings of fact, the Coastal Council found

Most of the difficulty associated with oysters is related to non-point source pollution and not construction of docks. The docks are to be constructed in such a fashion that the impact on public access to the oyster beds in and around the docks will be minimal. While the mere existence of the docks may tend to discourage public gathering of oysters along the Rhett's Bluff area, the docks themselves will have no impact on the oyster resources in the area which will remain suitable for public harvesting and consumption after the docks are constructed.

*Id.* at 76-77.

Considering the record as a whole, we must determine whether Coastal Council's decision is supported by substantial evidence. *Lark v. Bi-Lo*, 276 S.C. 130, 276 S.E. (2d) 304 (1981). The appellants rely heavily on the testimony of Dr. Crosby to the effect that docks harm the oysters and the testimony of Mr. Duncan that he did not know the cost of managing the oysters.

The record reflects that Dr. Michael Crosby, an assistant professor with the Baruch Institute, testified that the project would adversely impact the oysters primarily because of increased boat traffic and increased human activity in the area. Heyward Robinson, chief biologist of the South Carolina Coastal Council, and William D. Anderson, a shellfish biologist at the South Carolina Marine Resources Center, also testified. They testified that the primary culprit in pollution of oysters is fecal coliform from non-point sources. Rhetta Geddings, an employee of the Department of Health and Environmental Control, testified that she assisted in preparing the DHEC 401 Water Quality Certification. In preparing the 401 Water Quality Certification, Ms. Geddings testified that the DHEC

staff considered the hypothetical of two boats at each dock with simultaneously malfunctioning heads. Under this worst case scenario, the staff found that the impact on the water quality in the area would be small and quickly dissipate. Ms. Geddings' testimony is supported by the DHEC Staff Assessment, entered into the record. Ed Duncan, Environmental Coordinator of the South Carolina Wildlife Department, testified that he did not know the future cost of managing the oysters in the area. Mr. Duncan also testified that the Wildlife Department was not presently managing the oysters in the area and did not have plans to do so in the future. Finally, Mr. Duncan testified that the Wildlife Department does not usually object to single-family docks as the Wildlife Department has not identified any adverse affect to the oysters from single-family docks.

The evidence of the adverse impact of the docks on the oysters was conflicting. The factual finding of the Coastal Council that the project would not harm the oysters, however, is supported by substantial evidence. *Ross v. American Red Cross*, 298 S.C. 490, 381 S.E. (2d) 728 (1989) (full Commission ultimate finder of fact). The Coastal Council's conclusion that the agreement between the developer and the Wildlife Department is merely "additional insurance . . . to insure there is no reduction in the quality of the shellfish grounds" is also supported by substantial evidence in light of the testimony that the oysters would not be adversely affected by the project. *See Carter v. South Carolina Coastal Council*, 281 S.C. 201, 314 S.E. (2d) 327 (1984) (substantial evidence is, considering the record as a whole, evidence which would allow reasonable minds to reach conclusion agency reached). We affirm.

Appellants claim that the permit violates the "Public Trust" Doctrine.

> The underlying premise of the Public Trust Doctrine is that some things are considered too important to society to be owned by one person. Traditionally, these things have included natural resources such as air, water (including waterborne activities such as navigation and fishing), and land (including but not limited to seabed and riverbed soils). Under this Doctrine, everyone has the inalienable right to breath clean air; to drink safe water; to fish and

sail, and recreate upon the high seas, territorial seas and navigable waters; as well as to land on the seashores and riverbanks.

Syridon and LeBlanc, *The Overriding Public Interest in Privately Owned Natural Resources: Fashioning a Cause of Action,* 6 Tul. Envtl. L. J. 287 (1993).

In South Carolina, the state owns the property below the high water mark of a navigable stream. *State v. Hardee,* 259 S.C. 535, 193 S.E. (2d) 497 (1972). This property is part of the Publics Trust. *Id.* The legislation creating the Coastal Council and defining its duties, while not explicit, implicitly charges the Coastal Council with administering the Public Trust lands in connection with coastal waterways. *See* S.C. Code Ann. § 48-39-10, *et. seq.*

The control of the State for the purposes of the trust can never be lost, except as to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the public interest in the lands and waters remaining.

*Illinois Central R. Co. v. Illinois,* 146 U.S. 387, 453, 13 S.Ct. 110, 118, 36 L.Ed. 1018, 1042 (1892). Clearly, under the South Carolina Coastal Management Act, the State through the Coastal Council maintains *control* over the public trust lands. *See e.g. Caminiti v. Boyle,* 107 Wash. (2d) 662, 732 P. (2d) 989 (1987). Coastal Council's Regulations specifically state that "[n]o permit shall convey, nor be interpreted to convey, a property right in the land or water in which the permitted activity is located." 24A S.C. Code Ann. Regs. R. 30-4(E). Since no interest in the land or water within the public trust is conveyed by the permit, the relevant inquiry is whether the docks substantially impair the public interest in the public trust lands and waters. As there was testimony that the docks would not substantially impair marine life, water quality, or public access to the area, we hold that the permits at issue do not violate the public trust doctrine. We affirm.

### B. 401 WATER QUALITY CERTIFICATION

Appellants contend DHEC failed to consider the cumulative impact of the docks on the water quality. Although, the DHEC hearing officer agreed and found

that DHEC staff did not consider the cumulative impact, he concluded based upon the testimony and evidence presented that the cumulative impact on environmental resources would be minimal. The full DHEC Commission reversed the hearing officer on his finding that as a matter of law DHEC staff had not considered the cumulative impact of the docks on the environment. The full DHEC Commission, however, affirmed the hearing officer on all other findings of fact and conclusions of law including his finding that the thirty-six docks would not have a substantial cumulative impact on resources. As the full Commission affirmed the hearing officer on his finding that the Rhett's Bluff project would not have a substantial cumulative impact on the resources, the relevant inquiry is whether the DHEC hearing officer's findings are supported by substantial evidence. *See Lark v. Bi-Lo*, 276 S.C. 130, 276 S.E. (2d) 304 (1981) (role of this Court to determine if agency decision supported by substantial evidence).

Neither DHEC nor Coastal Council had a comprehensive plan concerning dock development in the coastal area or specifically on Kiawah Island. The Town of Kiawah Island has an ordinance, however, which limits the number and placement of docks on the island. The key location map depicting the areas on Kiawah Island where docks may be built under the ordinance was entered into the record. Based upon his findings that the closest location for other docks is approximately one-half mile from Rhett's Bluff, the hearing officer held that the Rhett's Bluff project "is simply not located close enough to other areas where intense enough dock development is permissible to justify the conclusion that the cumulative impacts would harm the resources." *Sierra Club v. Kiawah Resort Assocs.*, Health and Environmental Control Board Report and Recommendations of Hearing Officer, Lex A. Rogerson, Jr., dated March 9, 1992, ROA at 145.

The DHEC hearing officer did not rely solely on the location of the docks in relation to other potential development to support his conclusion that the thirty-six docks would have minimal cumulative impact on environment resources. He also considered the large volume of the Kiawah River and the river's location in relation to other potential dock development. Mr. Ivan Chu, a licensed engineer with a master's degree in coastal and oceanographic engineering, testified at

length as to the tidal flow of the Kiawah River and the dissipation rates of various pollutants. Mr. Chu's testimony was corroborated by the testimony of Mr. Edward Modzelewski, president of a coastal water resources and environmental consulting firm with locations in Charleston, South Carolina and Florida. We find the hearing officer's findings of fact supported by substantial evidence and affirm.

Next, Appellants contend DHEC's issuing the 401 Water Quality Certification will prevent public access to the oysters. Section 48-1-20 declares the public policy of this state to maintain reasonable standards of purity of air and water to protect the marine life. While DHEC is charged with overseeing this stated policy, DHEC is not charged with facilitating public access to marine life. The record reveals DHEC studied the water quality and determined the thirty-six docks would not adversely affect the marine life in the area. Thus, DHEC property discharged its responsibility under section 48-1-20. We find no merit to this claim of error.

### C. INJUNCTION

Finally, appellants claim the circuit court erred in refusing to enjoin the building of the docks. As we have found the permits were properly issued, an injunction would have been improper. *See e.g. Captain Sandy's Tours, Inc. v. Georgetown County Bldg. Official,* — S.C. —, 423 S.E. (2d) 99 (1992). We, therefore, AFFIRM.

CHANDLER, C.J., and FINNEY, MOORE and WALLER, JJ., concur.