510 S.E.2d 421

Janet C. HENDLEY and William E. Hendley, Respondents,

v.

SOUTH CAROLINA STATE BUDGET AND CONTROL
BOARD, acting by and through its Division of
Insurance Services, Petitioner.

No. 24875.

Supreme Court of South Carolina.

Heard May 14, 1998.

Decided Jan. 4, 1999.

Terry B. Millar, of Terry B. Millar, L.L.C., of Rock Hill; Craig K. Davis and James F. Flanagan, both of Davis Law Firm, P.C., of Columbia, for petitioner.

James R. Honeycutt, of Fort Mill, and James B. Richardson, Jr., of Svalina, Richardson & Larson, of Columbia, for respondents.

FINNEY, Chief Justice:

We granted certiorari to review the decision of the Court of Appeals which held that the State Health Plan (Plan) is obligated to pay for a "cranial hair vacuum prosthesis" for respondent Janet Hendley, who suffers from a medical condition which causes the loss of all body hair.[1] *Hendley v. South Carolina State Budget and Control Board,* 325 S.C. 413, 481 S.E.2d 159 (Ct.App.1996). We reverse, finding substantial evidence in the record supports the petitioner's decision to deny coverage for this prosthetic device.

■ In this appeal brought pursuant to the Administrative Procedures Act, respondents maintained that petitioner's decision to deny coverage for the prosthesis was not supported by substantial evidence. The Plan covers only an item which is medically necessary, one "that is required to identify or treat an illness or injury....." There is substantial evidence in the record to support petitioner's finding that the prosthetic device does not identify or treat Ms. Hendley's medical condition.

---

1. *alopecia universalis.*

■ Further, the Plan excludes coverage for prosthetic devices (other than breast implants) which have non-therapeutic uses. We find substantial evidence [2] supports the finding that the prosthetic device sought had non-therapeutic uses, and thus was excluded from coverage.

Like all the decision-makers involved in this case, we are sympathetic to Ms. Hendley's plight, and do not doubt that the prosthetic device she seeks would make her life less difficult. We are constrained, however, to review petitioner's decision and ask whether it is supported by substantial evidence, that is, is there evidence in the record upon which reasonable people would reach the same result? *Sierra Club v. Kiawah Resort Associates,* 318 S.C. 119, 456 S.E.2d 397 (1995). Having found such evidence, we reverse the decision of the Court of Appeals which itself reversed petitioner's denial of benefits.

**REVERSED.**

MOORE, WALLER, and BURNETT, JJ., concur.

TOAL, J., dissenting in a separate opinion.

TOAL, Justice:

The majority holds that the State Health Plan is not obligated to pay for Mrs. Hendley's "cranial hair vacuum prosthesis" because the prosthesis does not identify or treat Mrs. Hendley's medical condition and has non-therapeutic uses. The majority therefore reverses the Court of Appeals' decision in *Hendley v. South Carolina State Budget and Control Board,* 325 S.C. 413, 481 S.E.2d 159 (Ct.App.1996). I would hold that the hair prosthesis sought by Mrs. Hendley is covered by her health plan. I would therefore affirm the Court of Appeals' opinion. Accordingly, I dissent.

Mrs. Hendley suffers from *alopecia universalis* which, as noted by the Court of Appeals, results in the loss of all scalp and body hair, including the eyelashes and eyebrows. Mrs.

---

**2.** For example, the record shows coverage was sought because the prosthesis, which is more durable and more securely attached than an ordinary wig, would make walking on windy days or swimming at a pool "less traumatic and intimidating." We note that respondents were not represented by counsel at the evidentiary stage of these proceedings.

Hendley's doctor prescribed the cranial hair vacuum prosthesis for her condition. Mrs. Hendley's health plan covers "medical services and supplies Medically Necessary in the diagnosis or treatment of an illness or injury ... [including] *Prosthetic Appliances necessary for the alleviation or correction of conditions caused by trauma or disease....* " (Emphasis added). The health plan further defines *medically necessary* as a "service or supply that is required to identify or treat an illness or injury...." The health plan excludes prosthetic devices that have non-therapeutic uses.

Exclusions in an insurance policy are always construed most strongly against the insurer. *Boggs v. Aetna Casualty and Surety Co.*, 272 S.C. 460, 252 S.E.2d 565 (1979). In my view, the hair prosthesis sought by Mrs. Hendley in this case serves the same function and purpose as other prosthetic devices which presumably would be covered under her health plan. Just like an artificial limb or eye, the hair prosthesis "corrects" the condition caused by *alopecia universalis* in that it replaces a part of the body lost due to the disease. Its therapeutic value in this regard is no less real than that attributed to traditional limb prostheses.

As stated in *Abernathy v. Prudential Ins. of America*, 274 S.C. 388, 264 S.E.2d 836 (1980), the term "necessary" is best construed as what is "appropriate" for the insured's condition. Clearly, a hair prosthesis is an appropriate treatment for an otherwise incurable disease that results in the loss of all body hair. Admittedly, all prosthetic devices have some degree of cosmetic or non-therapeutic value. However, this fact alone would not exclude a prosthesis from coverage under Mrs. Hendley's health plan. Thus, in my opinion, Mrs. Hendley's hair prosthesis is covered by her health insurance.