712 S.E.2d 395

**ESTATE OF Patricia S. TENNEY, Respondent,**

v.

**The SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Office of Ocean and Coastal Resource Management and the State of South Carolina, Appellants.**

**No. 26965.**

Supreme Court of South Carolina.

Heard Feb. 2, 2011.

Decided April 25, 2011.

Rehearing Denied July 21, 2011.

Attorney General Alan Wilson and Assistant Deputy Attorney General J. Emory Smith, Jr., both of Columbia, for Appellant State of South Carolina, and Carlisle Roberts, Jr., of Columbia, and Davis Arjuna Whitfield–Cargile, of Charleston, for Appellant SCDHEC.

Mary D. Shahid and R. Cody Lenhardt, Jr., both of Charleston, of McNair Law Firm, for Respondent.

Chief Justice TOAL.

In this action to quiet title, the South Carolina Department of Health and Environmental Control (DHEC), the Office of Ocean and Coastal Resource Management (OCRM), and the State of South Carolina (the State) (collectively, Appellants) challenge the Order of the Master–in–Equity (master) holding that Patricia S. Tenney (Respondent)[1] is the fee simple owner of Little Jack Rowe Island (Little Jack Rowe), a 15.45 acre undeveloped island located in Beaufort County. We affirm.

### FACTS/PROCEDURAL BACKGROUND

This action was precipitated by OCRM's refusal to process Respondent's dock permit application without proof of a sovereign's grant to the property. In 2003, then Attorney General Henry D. McMaster (AG) issued an opinion in response to DHEC's question of whether it is legal to grant permits for bridges to islands that are presumed to be owned by the State, without a showing of a sovereign's grant. That opinion stated in accordance with *Coburg, Inc. v. Lesser*, 309 S.C. 252, 422 S.E.2d 96 (1992) (*Coburg I* ) and *Coburg Dairy, Inc. v. Lesser*, 318 S.C. 510, 458 S.E.2d 547 (1995) (*Coburg II* ) (collectively, *Coburg* ), the State is the presumptive owner of all "marsh islands," and therefore, permit applicants must produce "an original grant from the State or predecessor sovereign" to demonstrate ownership. 2003 S.C. AG LEXIS 231 (Dec. 5, 2003). Based on this opinion, on February 19, 2004, DHEC published a public notice advertising that all applicants seeking permits to build structures on undeveloped islands must provide a sovereign's grant as proof of ownership. This requirement was not statutory, as the South Carolina Code required only "[a] copy of the deed, lease or other instrument under which the applicant claims title, possession or permission from the owner of the property to carry out the proposal." S.C.Code Ann. § 48–39–140 (1987 & Supp. 1993).

On September 20, 2005, DHEC submitted draft regulations to the Board of Health and Environmental Control (Board)

---

1. On January 18, 2011, Respondent's counsel informed this Court of Respondent's death. This Court granted counsel's Motion to Substitute, as indicated in the caption.

that would amend 23A S.C. Reg. 30–2 and 30–12(N). This draft proposed that the State was the presumptive owner of marshes and coastal islands, and therefore, in order that an applicant be granted a permit to build a structure in these areas, the applicant must supply the following as proof of ownership: (1) a copy of a document that shows an original grant of the island from a sovereign, (2) an attorney's title opinion, (3) a title abstract, and (4) a deed to the applicant.

On June 23, 2006, the General Assembly adopted coastal island regulations promulgated by DHEC. The draft regulation described above was not included in these adopted regulations. Under section 48–39–140 of the South Carolina Code and in volume 23A of the South Carolina Code of Regulations, regulation 30–2–(B)(4), it remained that proof of ownership required only a copy of the deed or other document under which the applicant claimed ownership or authority to build. Nevertheless, on November 10, 2006, DHEC submitted a second public notice informing all interested parties that proof of ownership of undeveloped islands for which an applicant seeks to obtain a dock permit requires the applicant submit proof of a sovereign's grant, an attorney's title opinion, and an accompanying abstract of title.

On September 27, 2005, Respondent purchased Little Jack Rowe for $875,000 from Bradbury Dyer, III (Dyer) by way of general warranty deed. The chain of title to Little Jack Rowe dates back to 1865 when the United States government issued a Federal Tax Certificate as a measure to collect delinquent taxes from "insurrectionary districts within the United States." Little Jack Rowe is a 15.452 acre island located in Bluffton Township, Beaufort County, South Carolina. Before Respondent purchased Little Jack Rowe from Dyer, the island was historically sold as part of Jack Rowe Island. Jack Rowe Island is roughly 53 acres in size and is connected to Little Jack Rowe by a causeway approximately 100 yards in length that can be walked across at high tide. Jack Rowe Island currently has five docks connected to it. Similar to Jack Rowe Island, Little Jack Rowe is bordered on one side by the Cooper River,[2] a deep saltwater tidal river which is part of the

2. South Carolina has two Cooper Rivers; the more well-known Cooper River lies in Charleston, and the less-known Cooper River lies west of Hilton Head Island.

Intracoastal Waterway. The remaining majority of the island is bordered by tidal marshland.

Dyer, the previous owner of the island, held a dock permit approved by OCRM, which expired on May 12, 2005, four months prior to Respondent's purchase of the island. Respondent planned to build a house on the island, and the only convenient way to access the island is by mooring a boat to a dock. On November 7, 2005, Respondent submitted a critical area permit application to OCRM, seeking to construct a dock from Little Jack Rowe to the Cooper River. On November 29, 2005, OCRM forwarded the application to the AG's office.

On July 19, 2006, Respondent's attorney contacted the AG's office by letter, seeking to discern the AG's position regarding the dock permit and requesting the AG either approve or deny the application. The AG's office responded by letter stating that Respondent must produce a sovereign grant covering Little Jack Rowe in order that the office may review the application.

By Complaint dated February 27, 2007, Respondent brought this action to quiet title to Little Jack Rowe, in addition to several other causes of action. Each party submitted Motions for Summary Judgment, and the master denied each of these motions following a hearing, with the exception that the master ordered OCRM to either grant or deny Respondent's permit application. On March 26, 2008, DHEC issued Respondent a letter denying her permit application.

After trial and oral argument, the master issued an Order granting judgment for the Respondent on the ground that Little Jack Rowe is not a marsh island under *Coburg,* that Respondent was entitled to quieted title under the forty year statute, S.C.Code Ann. § 15-3-380 (2005), that the Federal Tax Certificate of 1865 represented a sovereign's grant, and that Respondent qualified for a dock permit under section 48-39-140 of the South Carolina Code and accompanying regulations. This case is before the Court pursuant to Rule 204(b), SCACR.

## ISSUE

**I.** Whether Respondent holds fee simple title to Little Jack Rowe Island.

## STANDARD OF REVIEW

■ This action was commenced as both a quiet title action and a request for declaratory judgment. Typically, an action to remove a cloud on and quiet title to land is one in equity. *Cathcart v. Jennings*, 137 S.C. 450, 135 S.E. 558, 562 (1926). However, "when the defendant's answer raises an issue of paramount title to land, such as would, if established, defeat the plaintiff's action, the issue of title is legal." *Dargan v. Tankersley*, 380 S.C. 480, 483, 671 S.E.2d 73, 74 (2008).

■ "Declaratory judgment actions are neither legal nor equitable and, therefore, the standard of review depends on the nature of the underlying issues." *Judy v. Martin*, 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009). In this case, the Court must determine the reach of its prior case law. Thus, this is an action at law. In an action at law tried before a master, the appellate court "will affirm the master's factual findings if there is any evidence in the record which reasonably supports them." *Query v. Burgess*, 371 S.C. 407, 410, 639 S.E.2d 455, 456 (Ct.App.2006). However, "[a]n appellate court may determine questions of law with no particular deference to the trial court." *Verenes v. Alvanos*, 387 S.C. 11, 14, 690 S.E.2d 771, 772–73 (2010).

## ANALYSIS

### I. Title to Little Jack Rowe Island

■ Appellants argue the master erred in finding Little Jack Rowe was not subject to a presumption of State ownership, as set forth in *Coburg*. After much consideration, we take this opportunity to overturn the specific holding of *Coburg* that "[t]itle to islands situate within marshland follows title to the marshland." *Coburg II*, 318 S.C. at 513, 458 S.E.2d at 548.

In *Coburg I*, Lesser received a permit from the South Carolina Coastal Council to construct a walkway and floating dock on marshland that contained two small islands, Glass Island and Small Island. *Coburg I*, 309 S.C. at 253, 422

S.E.2d at 97. These islands were bordered on one side by the Wappoo Creek, a navigable tidal stream on the Intracoastal Waterway, and on the remaining sides by marshland. Coburg brought an action to quiet title to the marshland and islands, claiming ownership pursuant to a 1967 deed which traced back to a 1703 grant from the Lords Proprietors to Robert Gibbes. *Coburg II,* 318 S.C. at 512, 458 S.E.2d at 548. After reciting the established principle that "[p]resumption of title to marshland rests in the State of South Carolina, to be held in trust for the benefit of the public," *Coburg I,* 309 S.C. at 253, 422 S.E.2d at 97, this Court followed, stating "ownership of islands situate within marshland follows ownership of the marshland." *Id. (comparing with McCullough v. Wall,* 4 Rich. 68, 53 Am.Dec. 715 (1850)). This Court remanded the case so the State could be added as a party. *Id.* at 255, 422 S.E.2d at 98.

In *Coburg II,* this Court found the Lord Proprietors grant upon which Coburg relied did not contain specific language showing the intent to convey land below the high water mark of Wappoo Creek. *Coburg II,* 318 S.C. at 513, 458 S.E.2d at 548. This Court then repeated its statement from *Coburg I* that "[t]itle to islands situate within marshland follows title to the marshland;" ultimately concluding the marshland and the islands in question belonged to the State. *Id.*

■ Under the public trust doctrine, the State holds presumptive title to tidal land below the high water mark to be held in trust for the benefit of all people of South Carolina. *McQueen v. S.C. Coastal Council,* 354 S.C. 142, 149, 580 S.E.2d 116, 119 (2003); *State v. Pacific Guano Co.,* 22 S.C. 50, 84 (1884). In areas subject to the public trust doctrine, presumption of State ownership "may be overcome only by showing a specific grant from the sovereign which is strictly construed against the grantee." *McQueen,* 354 S.C. at n. 6, 580 S.E.2d at n. 6.

The proposition that the public trust doctrine extends to lands above the high water mark first appeared in *Coburg I,* 309 S.C. at 253, 422 S.E.2d at 97. The proposition was supported by a comparison citation to *McCullough v. Wall,* 4 Rich. at 68, 53 Am.Dec. at 715, which involved a dispute over the ownership of a fishing rock located in the Catawba River. *Id.* The defendant in that case argued if the area of the river

surrounding the rock was navigable by boat, the fishing rock was for the enjoyment of the public. *Id.* However, if this area was non-navigable, the plaintiff, who allegedly owned the land to the west of the river, possessed title to the rock under the principle of *medium filum aquoe*, which imposes an imaginary property line at the center of the river. *Id.* This Court found the plaintiff owned the rock pursuant to his deed to the bordering riparian land. In dicta this Court stated, "[i]slands in rivers fall under the same rule as to the ownership of the soil and its incidents as the soil under water does." *Id.*

We decide today that neither the facts, nor the holding of *McCullough v. Wall* offer a substantial enough foundation for the principle propounded in *Coburg*. Importantly, *McCullough* involved riparian rights. *McCullough*, 4 Rich. at 68, 53 Am.Dec. at 715. This Court has long recognized that riparian property rights differ from the rights of landowners subject to the ebb and flow of tides. *See State v. Pacific Guano Co.*, 22 S.C. at 79 ("It is a settled principle of the English law that the right of owners of land bounded by the sea or on navigable rivers where the tide ebbs and flows, extends to high water mark. . . . But grants of land bounded on rivers . . . carry the exclusive right and title of the grantee to the centre of the stream"). The brief statement in *Coburg* that title to marsh islands follows title to the surrounding marsh has not been subsequently applied by this States' courts to quiet title in the State. Instead, our jurisprudence has continued to reflect the longstanding principle that the public trust doctrine extends only up to the land below the high water mark. *See State v. Fain*, 273 S.C. 748, 752, 259 S.E.2d 606, 608 (1979) (to prove its case that it owned certain lands, the State provided photographic evidence that the disputed land was covered by normal high tide); *see also State v. Hardee*, 259 S.C. 535, 543, 193 S.E.2d 497, 501 (1972) ("In the absence of specific language, either in the deed or on the plat, showing that it was intended to go below high water mark, the portion of the land between high and low water mark remains in the State in trust for the benefit of the public").

■ The principle that the State is unqualifiedly the presumptive owner of all marsh islands situated in state-owned marsh appears to be unique to South Carolina. In limited instances, some states have found islands to be state-owned

based on a lack of permanence. *See Giles v. Basore,* 154 Tex. 366, 374, 278 S.W.2d 830, 835 (1955) (islands formed in river by deposits of silt, soil, and logs that were not in existence at time land was granted is property of the owner of that area at the time it was granted, in that case the state); *see also Mulry v. Norton,* 55 Sickels 424, 432, 100 N.Y. 424, 3 N.E. 581, 584 (1885) ("if marine increase be by small and almost imperceptible degrees, it goes to the owner of the land; but if it be sudden and considerable it belongs to the sovereign"). In *Coburg,* the islands in question were described in Coburg's predecessor's deeds since 1843 and appeared on plats since at least 1853. *Coburg, Inc. v. Lesser,* No. 90–CP–10–2034R (S.C.Ct.Com.Pl. Mar. 13, 1991). Thus, the *Coburg* principle was not premised on permanence. We decline to diminish the bright line of the public trust doctrine with a test that requires case by case determination. Coastal lands are notoriously subject to the volatility of changing tides, erosion, and accretion. Landowners and potential landowners are well aware of the long-standing principle that the State is presumptive owner of lands below the high water mark. Accordingly, a person who possesses title to land especially vulnerable to this volatility takes title with the knowledge their land is at risk of loss to the State by natural forces.

Other grounds by which this Court might narrow the reach of *Coburg* are similarly flawed. The master in this case found the *Coburg* principle did not apply to Little Jack Rowe for two reasons: (1) the physical characteristics of the islands differed; and (2) Respondent in this case held a specific title to Little Jack Rowe, whereas in *Coburg,* there was no evidence of a specific deed or history of record title for the small islands. Although we recognize the master's effort to reach an equitable solution, in our view, an attempt to limit *Coburg,* either by physical characteristic or title history, will sacrifice clarity and uniformity for the sake of stare decisis.

The master found Little Jack Rowe was not "situate within marshland" because it is located on the Cooper River. In our view this is a distinction without a difference because both the *Coburg* islands and Little Jack Rowe are bordered by navigable waterways on the Intracoastal Waterway. Therefore, when this Court established the principle that the State is the presumed owner of marsh islands, it did not intend to limit

that presumption only to islands completely surrounded by marshland.

The master additionally distinguished the islands by size, stating the *Coburg* islands were insubstantial "marsh hummocks," [3] while Little Jack Rowe is a substantial island of more than fifteen acres.[4] Based on the definition given hammocks by the South Carolina Department of Natural Resources (DNR),[5] both the *Coburg* islands and Little Jack Rowe are considered hammock islands. For clarity, we believe marsh hammocks to be the technical term for "islands situate within marshland," *Coburg II*, 318 S.C. at 513, 458 S.E.2d at 548. Because marsh hammocks can vastly vary in size,[6] the State and its courts cannot practically and uniformly apply the presumption of State ownership theory based on an island's size. In our view, an attempt to confine *Coburg* to include only "smaller" hammocks would arbitrarily extend the public trust·doctrine and would likely cloud titles of thousands of coastal islands.[7]

Lastly, the master distinguished the *Coburg* islands by noting those islands lacked a specific deed or history of record title. In *Coburg*, Coburg's deed description included the two islands; however, the sovereign grant upon which Coburg relied, did not include a specific description of those islands. *Coburg II*, 318 S.C. at 512, 458 S.E.2d at 548. This case

---

3. Also known as hammocks.

4. From a scaled plat provided in the record, Appellants estimate that Glass Island is approximately 150 feet × 225 feet, and Small Island is approximately 160 feet × 150 feet.

5. Hammocks are back barrier islands "typically located behind the oceanfront barrier islands and adjacent to the larger Sea Islands." An Ecological Characterization of Coastal Hammock Islands in South Carolina, Final Report to OCRM SCDMV (Dec. 1, 2004) (DNR Report). "Almost all [marsh hammocks] are surrounded by expanses of Salt Marsh, occasionally being bordered by tidal creeks or rivers." *Id.*

6. These islands range "in size from less than an acre to several hundred acres." *Id.* The DNR Report reveals the majority of marsh hammocks are very small—53.7% are less than one acre and 81.5% are less than five acres. *Id.*

7. South Carolina has "approximately 3,467 coastal islands, not including the larger 'Sea Islands' such as Hilton Head." *Id.*

presents a similar factual scenario, as Respondent's deed described Little Jack Rowe, but the Federal Tax Certificate upon which Respondent relied did not specifically describe the island. Therefore, this is another distinction without a difference. It is common for ancient coastal deeds to convey groups of islands, without mention of specific island names. It is equally common for these islands' names to have changed over time. In our view, narrowing *Coburg* on the ground the State is the presumptive owner of marsh islands whose sovereign grant lacks a specific description of the island claimed would cloud title to a vast number of marsh islands in this State, many containing homes, businesses, and infrastructure.[8]

In sum, the jurisprudence of this State is consistent that "[p]resumption of title to marshland rests in the State of South Carolina, to be held in trust for the benefit of the public." *Coburg I*, 309 S.C. at 253, 422 S.E.2d at 97. However, the proposition that the State is the presumed owner of land that remains above the high water mark is at odds with coastal property jurisprudence that predated *Coburg*, and expands the public trust doctrine beyond its historic bounds. Of the 3,467 coastal islands in South Carolina, the DNR estimates that 72% of these are privately owned. We do not see a practical and uniform way to narrow the scope of *Coburg* without clouding the title of potentially thousands of marsh islands.[9] We do not underestimate the importance of these islands as the vestiges of our State's most fragile ecosystems, and we recognize the State's interest in protecting and preserving these lands for the enjoyment of all citizens. DHEC and other agencies of this State have the regulatory authority to prevent or limit the development of our State's pristine coastal areas, and our opinion today leaves them at liberty to continue those efforts. Current and potential marsh island owners should be keenly aware of this regulatory risk. However, we do not believe the protection and preservation of

8. Developed marsh islands include many of the marsh islands in the Folly and Kiawah regions, for example. *Id.*

9. Currently, DHEC requires a sovereign's grant for only undeveloped marsh islands. Although DHEC has chosen to apply the *Coburg* principle sparingly, without modification, there is little to preclude DHEC, or any other state entity, from extending the presumption of state ownership to all 3,467 marsh islands.

these islands should be effected through the unprecedented expansion of the public trust doctrine. Therefore, we overrule the specific principle found in the *Coburg* cases that "ownership of islands situate within marshland follows ownership of the marshland." *Coburg I*, 309 S.C. at 253, 422 S.E.2d at 97.

## CONCLUSION

Appellants raised the additional issues of whether the master erred in declaring Respondent's forty years of record title defeated the state's presumption of title, finding the 1865 Federal Tax Certificate represented a sovereign grant, and addressing permitting issues that were not before the court. In light of our disposition of this case, we do not find it necessary to address these remaining issues. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999). Today we overturn the specific holding of the *Coburg* cases that "[t]itle to islands situate within marshland follows title to the marshland." *Coburg II*, 318 S.C. at 513, 458 S.E.2d at 548. Therefore, we quiet title to Little Jack Rowe island in favor of Respondent.

BEATTY, KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., concurring in result only.