**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

City of Folly Beach; Coastal Conservation League; Save Folly Beach, Inc.; John Collins; Matt Napier; Paula Stubblefield; Troy Bode; and Carol Kruer, Appellants,

v.

State of South Carolina; Amy Connelly; Jeffrey H. Morris; Michael Vandaele; Stephen Rawe; Juan Enterprises, LLC; Juanita A. Wright; Debbie's Folly, LLC; and Vernon Keller Staubes, Jr., as personal representative of the Estate of Vernon Staubes, Defendants,

Of which State of South Carolina; Jeffrey H. Morris; Michael Vandaele; Stephen Rawe; Juan Enterprises, LLC; Juanita A. Wright; and Vernon Keller Staubes, Jr., as personal representative of the Estate of Vernon Staubes, are Respondents.

Appellate Case No. 2020-000937

———

Appeal From Charleston County
Mikell R. Scarborough, Master-in-Equity

———

Unpublished Opinion No. 2023-UP-284
Heard May 11, 2023 – Filed August 2, 2023

———

**REVERSED AND REMANDED**

———

Amy Elizabeth Armstrong and Leslie S. Lenhardt, both of S.C. Environmental Law Project, of Pawleys Island; and Michael Gary Corley, of S.C. Environmental Law Project, of Greenville, for Appellants.

Mary Duncan Shahid and Robert Bruce Wallace, both of Maynard Nexsen, of Charleston, for Respondents Jeffrey H. Morris and Stephen Rawe.

Angelica M. Colwell, of Maynard Nexsen, of Charleston, for Respondent Stephen Rawe.

Gregory Jacobs English, of Wyche Law Firm, of Greenville, for Respondent Juanita A Wright.

Rita Bolt Barker, of Wyche Law Firm, of Greenville, for Respondents Juan Enterprises, LLC, and Juanita A Wright.

Deputy Attorney General J. Emory Smith, Jr., of Columbia, for Respondent State of South Carolina.

Kerry W. Koon, of Kerry W. Koon, Attorney at Law, of Charleston, for Respondent Vernon Keller Staubes, Jr., as the Personal Representative of the Estate of Vernon Staubes.

---

**PER CURIAM:**  The City of Folly Beach; Coastal Conservation League; Save Folly Beach, Inc.; John Collins; Matt Napier; Paula Stubblefield; Troy Bode; and Carol Kruer (collectively, Appellants) appeal the Master-in-Equity's dismissal of their declaratory judgment action in which they sought a determination that the boundary between public and private property on oceanfront property on Folly Beach is the high water line as it existed before the latest beach renourishment in 2018 and that the State of South Carolina owns portions or all of certain super-beachfront lots.  Appellants also sought injunction prohibiting development

of these lots.[1]  On appeal, Appellants argue the master erred in (1) finding they did not have standing to present their claims to the court; (2) finding they failed to allege a viable cause of action; and (3) dismissing the case because he found they failed to name indispensable parties to the case.  We reverse and remand.

**STANDING**

Appellants argue the master erred in finding they lacked standing to bring this declaratory judgment action.  We agree.

"A motion to dismiss for lack of standing challenges the court's subject matter jurisdiction."  *S.C. Pub. Int. Found. v. Wilson*, 437 S.C. 334, 340, 878 S.E.2d 891, 894 (2022).  "Whether subject matter jurisdiction exists is a question of law, which [the appellate c]ourt is free to decide with no particular deference to the circuit court."  *Id.*  Thus, the appellate court "review[s] the circuit court's findings de novo."  *Id.*  "In its most basic sense, '[s]tanding refers to a party's right to make a legal claim or seek judicial enforcement of a duty or right.'"  *Pres. Soc'y of Charleston v. S.C. Dep't of Health & Env't Control*, 430 S.C. 200, 209, 845 S.E.2d 481, 486 (2020) (alteration in original) (quoting *S.C. Dep't of Soc. Servs. v. Boulware*, 422 S.C. 1, 7, 809 S.E.2d 223, 226 (2018)).  "To have standing, one must have a personal stake in the subject matter of the lawsuit."  *Sea Pines Ass'n for the Prot. of Wildlife, Inc. v. S.C. Dep't of Nat. Res.*, 345 S.C. 594, 600, 550 S.E.2d 287, 291 (2001).  "In other words, one must be a real party in interest."  *Id.*  "A real party in interest is one who has a real, material, or substantial interest in the subject matter of the action, as opposed to one who has only a nominal or technical interest in the action."  *Charleston Cnty. Sch. Dist. v. Charleston Cnty. Election Comm'n*, 336 S.C. 174, 181, 519 S.E.2d 567, 571 (1999) (quoting *Anchor Point, Inc. v. Shoals Sewer Co.*, 308 S.C. 422, 428, 418 S.E.2d 546, 549 (1992)).

---

[1] Our supreme court recently set forth an excellent history of "the distinct fragility of Folly Beach's coastline" and the super-beachfront properties that "threaten[] the existence of the entire beach in that area of the state" by worsening the erosion rates.  *Braden's Folly, LLC v. City of Folly Beach*, 439 S.C. 171, 179-85, 886 S.E.2d 674, 679-82 (2023).  Respondents Jeffrey H. Morris; Michael Vandaele; Stephen Rawe; Juan Enterprises, LLC; Juanita A. Wright; and Vernon Keller Staubes, Jr., as personal representative of the Estate of Vernon Staubes (Respondent Owners) are the owners of currently undeveloped super-beachfront lots.  Appellants John Collins, Matt Napier, Paula Stubblefield, Troy Bode, and Carol Kruer (Appellant Owners) are the owners of lots landward of Respondent Owners' super-beachfront lots.

We hold Appellants established they have constitutional standing to bring this action. *See Pres. Soc'y of Charleston*, 430 S.C. at 209-10, 845 S.E.2d at 486 ("Standing may be acquired (1) by statute, (2) under the principle of 'constitutional standing,' or (3) via the 'public importance' exception to general standing requirements."). For constitutional standing, the plaintiff has the burden of establishing three elements: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical'"; (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court'"; (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Sea Pines Ass'n for the Prot. of Wildlife, Inc.*, 345 S.C. at 601, 550 S.E.2d at 291 (alterations in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The general rule is that a municipality must allege an infringement of its own proprietary interests or statutory rights to establish standing." *Glaze v. Grooms*, 324 S.C. 249, 255, 478 S.E.2d 841, 845 (1996).

"In order for an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Carnival Corp. v. Hist. Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 75, 753 S.E.2d 846, 850 (2014). "[C]oncerns reflecting aesthetic or recreational interests have been recognized as 'judicially cognizable injur[ies] in fact.'" *Town of Arcadia Lakes v. S.C. Dep't of Health and Env't Control*, 404 S.C. 515, 531, 745 S.E.2d 385, 394 (Ct. App. 2013) (second alteration in original) (quoting *Sea Pines Ass'n for the Prot. of Wildlife, Inc.*, 345 S.C. at 602, 550 S.E.2d at 292)); *see, e.g., Smiley v. S.C. Dep't of Health & Env't Control*, 374 S.C. 326, 328, 332, 649 S.E.2d 31, 32, 34 (2007) (holding a plaintiff had standing to challenge a beach sand scraping permit because "[t]he averments in [plaintiff's] affidavit that he recreates and views nature on the beach on an almost daily basis is a sufficient allegation of a 'concrete and particularized invasion.'"). Additionally, "[a]n economic interest is a legally protected interest." *Opternative, Inc. v. S.C. Bd. of Med. Exam'rs*, 433 S.C. 405, 414, 859 S.E.2d 263, 268 (Ct. App. 2021) *aff'd*, 437 S.C. 258, 878 S.E.2d 861 (2022).

First, we hold Appellant Owners have articulated concrete and particularized injuries that could be addressed by a determination of the ownership of the super-beachfront lots. *See Town of Arcadia Lakes*, 404 S.C. at 529, 745 S.E.2d at 392 ("'At the pleading stage, general factual allegations of injury resulting from the

defendant's conduct may suffice' to withstand a motion to dismiss." (quoting *Lujan*, 504 U.S. at 561)).  Appellants alleged in their complaint that the development of the Respondent Owners' super-beachfront lots would result in irreparable injury to Appellants by depriving them of their right to access property held in public trust and would "specifically impair and threaten their property rights."  In their affidavits, Appellants Kruer and Napier related that the residences and seawalls on the developed super-beachfront lots exacerbated the erosion on the public beach.  As our supreme court noted, the development of the super-beachfront lots "is threatening the existence of the entire beach in that area of the state." *Braden's Folly, LLC*, 439 S.C. at 179, 886 S.E.2d at 679.  Kruer and Napier also described how development of other super-beachfronts lots made it impossible for them to walk or jog on the beach when the tide was up to the seawalls on the lots.  They asserted that if Respondent Owners' super-beachfront lots were developed, they would be excluded from those portions of the public trust that they had enjoyed, including their access to the beach and their ability to use the public beach.  They also asserted the view from their properties would be drastically diminished, which would lower their properties' values.  Napier further stated Respondents Wright and/or Juan Enterprises erected barricades in the dunes blocking his path to the beach.  Kruer and Napier also contended that the determination of the ownership status of the super-beachfront lots was "essential to the continued use and enjoyment" of their properties and to their properties' values.  Accordingly, we find Appellant Owners have set forth injuries to their property, aesthetic, or recreational interests. *See Town of Arcadia Lakes*, 404 S.C. at 531, 745 S.E.2d at 394 ("[C]oncerns reflecting aesthetic or recreational interests have been recognized as 'judicially cognizable injur[ies] in fact.'" (second alteration in original) (quoting *Sea Pines Ass'n for the Prot. of Wildlife, Inc.*, 345 S.C. at 602, 550 S.E.2d at 292)); *Opternative, Inc.*, 433 S.C. at 414, 859 S.E.2d at 268 (stating "[a]n economic interest is a legally protected interest").

We hold the City also articulated particularized injuries that could be addressed by this action.  Spencer Wetmore, the City's administrator, stated the City's interest in this action was based in part in preventing the "inherently problematic development" of additional super-beachfront lots.  She asserted the development of Respondent Owners' super-beachfront lots may cause the same problems that have occurred with the super-beachfront lots already developed, including (1) aesthetically unappealing, non-conventional designs of houses; (2) damage to oceanfront sand-dunes, which are necessary for the protection of homes and infrastructure; and (3) erosion leaving houses stranded on active beach with exposed septic tanks and damaged foundations, making the houses uninhabitable and creating a significant management and administrative burden on the City.  In

addition, Wetmore claimed the City needed clarification of the property line of the super-beachfront lots in order to (1) effectively administer its ordinances in permitting seawalls and revetments of the beachfront; (2) conduct maintenance projects, such as planting dune vegetation, erecting sand fences, and the minor moving of sand, which it only can do on public land; and (3) plan, execute, and allocate costs of future beach renourishment projects.  She explained that in order for the City to receive federal funds for renourishment, the City was required to (1) only use those funds for renourishment of public property, and (2) ensure the renourishment of adjoining private property at the expense of the City and private property owners.[2]  In *Braden's Folly*, our supreme court related that "absent the ongoing beach renourishment projects, the erosion in Folly Beach would have swept away not only the entirety of the [super-beachfront] lots by now, *but also the entirety of the A lots on East Ashley Avenue*[3] *as well*."  439 S.C. at 198-99, 886 S.E.2d at 689.  The court explained, "If federal funding is lost due to super-beachfront development, and Folly Beach is unable to secure enough local funds to itself pay for the renourishment projects, all of the houses on the northeast end of Folly Beach . . . will be underwater in the next two to three decades."  *Id.* at 199, 886 S.E.2d at 689.  In the present matter, we hold the City articulated particularized injuries to its aesthetic, economic, and property interests that could be redressed by a favorable decision in this action.  *See Town of Arcadia Lakes*, 404 S.C. at 531, 745 S.E.2d at 394 ("[C]oncerns reflecting aesthetic or recreational interests have been recognized as 'judicially cognizable injur[ies] in fact.'" (second alteration in original) (quoting *Sea Pines Ass'n for the Prot. of Wildlife, Inc.*, 345 S.C. at 602, 550 S.E.2d at 292)); *Opternative, Inc.*, 433 S.C. at 414, 859 S.E.2d at 268 (stating "[a]n economic interest is a legally protected interest").

We also disagree with the master's finding that Appellants lacked standing because their alleged injuries are conjectural and hypothetical.  Appellants were not required to wait until Respondent Owners began construction on their super-beachfront lots in order for Appellants' alleged injury to be "actual or imminent, not 'conjectural' or 'hypothetical.'"  *See Sea Pines Ass'n for the Prot. of Wildlife, Inc.*, 345 S.C. at 601, 550 S.E.2d at 291 (stating "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical'" (quoting *Lujan*, 504 U.S. at 560)); *see also Smiley*, 374 S.C. at

---

[2] Wetmore explained that the Army Corps of Engineers requires the adjoining private property to be built up to the same height as the public renourishment, in order to protect the structural integrity of the renourishment project.

[3] The lots landward of the super-beachfront lots.

330-31, 649 S.E.2d at 33-34 (holding plaintiff had standing to challenge a permit for beach sand scraping when the permit had been issued but the scraping had not started and explaining that "denying standing to an individual unless and until the 'injury' has been inflicted ignores the 'actual or imminent' requirement").

Accordingly, we find Appellants Owners and the City have established an injury in fact, which is causally connected to Respondent Owners' assertions of ownership of the super-beachfront lots, and likely to be addressed by a favorable decision in this action. *See Sea Pines Ass'n for the Prot. of Wildlife, Inc.*, 345 S.C. at 601, 550 S.E.2d at 291 (stating that for constitutional standing, the plaintiff has the burden of establishing three elements: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical'"; (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court'"; (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" (alterations in original) (quoting *Lujan*, 504 U.S. at 560-61)). Accordingly, we hold the master erred in finding they did not have standing to bring this action. Furthermore, we hold that because Napier has standing to bring this action and is a member of the Coastal Conservation League and Save Folly Beach, these organizations have established associational standing. *See Pres. Soc'y of Charleston*, 430 S.C. at 211, 845 S.E.2d at 487 (holding "an organization has associational standing to bring suit on behalf of its members when (1) at least one member would otherwise have standing (statutory, constitutional, or otherwise) to sue in his or her own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit").[4]

---

[4] We also hold the master erred in finding Appellants abandoned their claim against the State by stating they were "apathetic about whether or not the [S]tate continues as a party in this case"; Appellants merely distinguished their particularized injuries from the generalized grievances suffered by the public as a whole. *See Carnival Corp.*, 407 S.C. at 75, 753 S.E.2d at 850 ("In order for an injury to be particularized, it must affect the plaintiff in a personal and individual way."); *id.* ("'[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly

**OWNERSHIP OF SUPER-BEACHFRONT LOTS**

Appellants argue the master erred in dismissing their action for failure to state a claim. They assert they made sufficient allegations in their complaint to support a claim that portions of the super-beachfront lots are now public trust property. We agree.

"Under the public trust doctrine, the State holds presumptive title to tidal land below the high water mark to be held in trust for the benefit of all people of South Carolina." *Estate of Tenney v. S.C. Dep't of Health & Env't Control*, 393 S.C. 100, 106, 712 S.E.2d 395, 398 (2011). "The State has the exclusive right to control land below the high water mark for the public benefit and cannot permit activity that substantially impairs the public interest in marine life, water quality, or public access." *McQueen v. S.C. Coastal Council*, 354 S.C. 142, 149, 580 S.E.2d 116, 119-20 (2003) (citation omitted). "Coastal lands are notoriously subject to the volatility of changing tides, erosion, and accretion." *Estate of Tenney*, 393 S.C. at 108, 712 S.E.2d at 399. "[A] person who possesses title to land especially vulnerable to this volatility takes title with the knowledge their land is at risk of loss to the State by natural forces." *Id.* "[U]nder South Carolina law, wetlands created by the encroachment of navigable tidal water belong to the State." *McQueen*, 354 S.C. at 150, 580 S.E.2d at 120. "Proof that land was highland at the time of grant and tidelands were subsequently created by the rising of tidal water cannot defeat the State's presumptive title to tidelands." *Id.* "South Carolina recognizes the general common law rule that accretions by natural alluvial action to riparian or littoral lands become the property of the riparian or littoral owner whose lands are added to." *Horry County v. Woodward*, 282 S.C. 366, 369, 318 S.E.2d 584, 586 (Ct. App. 1984). "Conversely, lands gradually encroached upon by water cease to belong to the former riparian or littoral owner." *Id.* at 370, 318 S.E.2d at 586. "The law gives the riparian proprietor the benefit of additions to his land caused by accretion or reliction." *Id.* "However, it also requires him to bear the corresponding risk that land will be lost by gradual erosion or submergence." *Id.* "The rule is said to rest on the principle of natural justice that one who sustains the burden of losses imposed by the contiguity of waters shall be entitled also to whatever benefits they bring." *Id.* "Avulsion, by contrast, as derived from English common law, is the sudden and perceptible change in land and is said not to divest

and tangibly benefits him than it does the public at large—does not' possess standing." (alteration in original) (quoting *Lujan*, 504 U.S. at 573-74)).

an owner of title." *Braden's Folly, LLC*, 439 S.C. at 185 n.13, 886 S.E.2d at 682 n.13 (quoting *Severance v. Patterson*, 370 S.W.3d 705, 722 (Tex. 2012)); *see also Georgia v. South Carolina*, 497 U.S. 376, 404 (1990) ("[A]vulsive action ordinarily calls to mind something somewhat sudden or, at least, of short duration . . . .").

Appellants alleged that prior to the 2018 renourishment, the super-beachfront lots were entirely or almost entirely submerged below the mean high water line. They further alleged the 2018 renourishment was a "sudden, perceptible, and artificial addition of sand, which constituted an avulsion," which did not restore Respondent Owners' rights to the property that had been below the mean high water line before the renourishment. Viewing the facts and inferences reasonably deducible therefrom in the light most favorable to Appellants, we hold they have sufficiently alleged facts that could support a claim that the portions of the super-beachfront lots below the mean high water line before 2018 renourishment are now public trust property. *See Doe v. Bishop of Charleston*, 407 S.C. 128, 134, 754 S.E.2d 494, 497 (2014) ("When reviewing the dismissal of an action pursuant to Rule 12(b)(6), SCRCP, the appellate court applies the same standard of review as the trial court."); *id.* ("If the facts alleged and inferences reasonably deducible from the allegations set forth in the complaint, viewed in the light most favorable to the plaintiff, entitle him to relief on any theory, dismissal under Rule 12(b)(6) is improper."); *id.* ("The complaint should not be dismissed merely because the court doubts the plaintiff will prevail in the action."); *id.* at 134, 754 S.E.2d at 497-98 ("When reviewing a motion to dismiss for failure to state facts sufficient to constitute a cause of action, the pleadings must be construed liberally, and all well pled facts must be presumed true." (footnote omitted)).

Furthermore, we find the master erred in considering matters beyond the face of the complaint, including that the Respondent Owners paid for renourishment of their lots with their private funds, that the stated intent of the renourishment project was the mitigation of damages to both public and private lands along the coast caused by federal navigation projects, and that the manmade erosion caused by the construction of the Charleston Harbor jetties was the avulsive event. *See id.* at 134, 754 S.E.2d at 497 (stating a "complaint should not be dismissed merely because the court doubts the plaintiff will prevail in the action"); *Brown v. Leverette*, 291 S.C. 364, 367, 353 S.E.2d 697, 699 (1987) (reversing a trial court's granting of a Rule 12(b)(6) motion because the trial court considered supporting affidavits and ruled on "defenses . . . not apparent from the face of the complaint"). We hold the issue in the present case, whether portions of the super-beachfront lots are public trust property, is a novel issue that would benefit from further

development of the facts, better portraying the legal issue. *See Evans v. State*, 344 S.C. 60, 68, 543 S.E.2d 547, 551 (2001) ("As a general rule, important questions of novel impression should not be decided on a Rule 12(b)(6), SCRCP, motion to dismiss."). Accordingly, we hold the master erred in dismissing Appellants' complaint pursuant to Rule 12(b)(6), SCRCP.

## INDISPENSABLE PARTIES

Appellants argue the master erred in dismissing their action for failure to name indispensable parties. We agree.

If the master believed all owners of other super-beachfront lots were indispensable parties, the remedy was to make them parties to this action rather than dismissing the action. *See Charleston Cnty. Parents for Pub. Schs., Inc. v. Moseley*, 343 S.C. 509, 514, 541 S.E.2d 533, 535 (2001) ("[T]he remedy under Rule 19, SCRCP[,] is for the Court to make the [indispensable party] a party, not to dismiss the action."). Thus, the master erred in imposing an overly harsh remedy.

## ALTERNATE SUSTAINING GROUNDS AND REMAINING ISSUES

We decline to address Respondents' additional sustaining ground. *See I'On, L.L.C. v. Town of Mount Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("It is within the appellate court's discretion whether to address any additional sustaining grounds."). We also decline to address Appellants' remaining arguments. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive).

**REVERSED AND REMANDED.**

**GEATHERS, VINSON, and VERDIN, JJ., concur.**